Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ROSHAM STEIDEL MORALES Y OTROS<br><br>*Apelantes*<br><br>v.<br><br>NOEL SOTOMAYOR CASANOVA Y OTROS<br><br>*Apelados* | TA2025AP00312 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2023CV01252<br><br>Sobre: Daños y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de noviembre de 2025.

Comparecen ante nos el señor José Laboy Rodríguez y la señora Rosham Steidel Morales (en conjunto, los apelantes), mediante recurso de *Apelación* y solicitan que revoquemos la *Sentencia Parcial*[1] emitida el 22 de julio de 2025 y notificada el día posterior por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro apelado). Mediante el referido dictamen, el TPI declaró *Ha Lugar* la *Moción de Sentencia Sumaria*[2] y, en consecuencia, desestimó la demanda contra el señor Noel Sotomayor Casanova y su esposa, la señora Becky Cintrón Bernier (los apelados).

Por los fundamentos que expondremos a continuación, **revocamos** la *Sentencia Parcial* apelada.

---

[1] Entrada núm. 51 del Sistema Unificado de Manejo y Administración de Casos, (SUMAC).

[2] Entrada núm. 36 de SUMAC.

**I.**

El asunto ante nosotros se origina el 25 de agosto de 2023, cuando los apelantes presentaron la *Demanda*[3] contra los apelados. Ahí, esbozaron que los apelados son dueños en pleno dominio de la casa localizada en la Urbanización Sunrise Calle Aurora C-2, Palmas del Mar, Humacao. Que, para la fecha del 24 de mayo de 2014, las partes suscribieron un *Contrato de Alquiler con Opción a Compra*[4]. En dicho contrato estipularon "***el precio de la propiedad en el monto del balance de cancelación que será el precio que habrá de pagar EL ARRENDATARIO de ejercer su derecho de Opción a Compra*** el cual se prolongará hasta el 23 de mayo de 2017". Además, establecieron que el canon de renta mensual se abonaría al principal de la hipoteca y este equivale al pago de mil seiscientos sesenta y siete dólares ($1,667.00) así como la cuota de mantenimiento mensual que asciende a Doscientos dólares ($200.00). Posteriormente, el 25 de agosto de 2020, suscribieron una *Renovación de Contrato de Alquiler con Opción a Compra*[5]. Reiteraron las cláusulas antes mencionadas, así como modificaron el pago mensual que ascendía en ese entonces a mil seis dólares ($1,006.00), se añadió la cláusula K, en donde se expresó que, de no ejercitarse la opción de compra, los apelados se comprometían a devolver la suma de ochenta mil dólares ($80,000.00), cantidad que aportarían como depósito para abonar al precio de la venta. Este contrato tenía una vigencia hasta el 25 de agosto de 2023. El 29 de diciembre de 2021, las partes otorgaron un *Contrato de Compraventa*[6] como parte del préstamo con Oriental Bank, en dicho contrato se acordó el precio de venta por la cantidad de doscientos cuarenta y tres mil dólares ($243,000.00), los apelantes entregaron

---

[3] Entrada núm. 1 de SUMAC.
[4] *Íd.*, anejo #2.
[5] *Íd.*, anejo #3.
[6] *Íd.*, anejo #4.

ochenta mil dólares ($80,000.00) por concepto de depósito y se fijó el término de noventa (90) días para ejecutar la opción de compra. Sin embargo, el préstamo fue denegado. Alegaron que para marzo de 2023 iniciaron gestiones con AEELA Mortgage para obtener el préstamo hipotecario y el préstamo fue aprobado. No obstante, adujeron que AEELA Mortgage les notificó que en la *Renovación de Contrato de Alquiler con Opción a Compra* el precio de venta no fue incluido y esta entidad les envío un documento intitulado *Contrato de Compraventa, Contrato de Opción de Compraventa*[7]*,* para que las partes lo firmaran y así subsanar la omisión del precio. Sin embargo, los apelados se negaron a firmar dicho documento. Ante dicha negativa, la fecha del cierre fue pospuesta en varias ocasiones y la compraventa no se hizo por los actos de los apelados. Solicitaron al TPI daños continuos e incumplimiento de contrato.

Por otra parte, el 19 de octubre de 2023, los apelados presentaron *Contestación a Demanda*[8], alegaron que *el contrato de opción de compra, así como el subsiguiente contrato intitulado Renovación de Contrato de Alquiler con Opción de Compra son nulos por carecer de causa y consentimiento. Las partes nunca se pusieron de acuerdo sobre el precio de la cosa.* Subsiguientemente, el 20 de octubre de 2023, presentaron una *Reconvención*[9] en la cual alegaron, entre otras, que: "[...] 3. *El referido contrato de opción de compraventa venció el pasado 25 de agosto de 2023 sin que la parte demandante-reconvenida ejerciera su opción de compra por lo que dicho contrato expiró. 4. Siendo ello así la parte demandada-reconviniente tiene derecho a recobrar la posesión del inmueble del que tiene título. 5. Se solicita el desahucio de la parte demandante-reconvenida y se ordene el desalojo de la propiedad que ocupa"*.

---

[7] *Íd.*, anejo #5.
[8] Entrada núm. 19 de SUMAC.
[9] Entrada núm. 20 de SUMAC.

El 28 de febrero de 2025, los apelados presentaron *Moción de Sentencia Sumaria*[10]. En síntesis, alegaron que el contrato del 25 de agosto de 2020 no disponía del precio, razón por la cual carece de causa, tampoco tenía término de vencimiento de la misma ya que en el contrato del 2020 tiene como fecha de vencimiento el 25 de agosto de 2023 y el del 29 de diciembre de 2021 es de noventa días a partir de la fecha de la firma, por lo que venció el 30 de marzo de 2022 sin que los apelantes pudieran ejercer su derecho de opción. Como prueba para sustentar el petitorio incluyeron como anejos los siguientes documentos: Renovación de Contrato de Alquiler con Opción a Compra, Contrato de Compraventa, Contrato de Compraventa/ Contrato de Opción de Compraventa de AEELA (en Blanco), Anejo al Contrato de Opción a Compraventa (en blanco), Contrato de Alquiler con Opción a Compra, página 1, 2, 3 y 4 de la transcripción de la deposición de la señora Steidel Morales.

El 24 de marzo de 2025, los apelantes presentaron *Oposición a "Moción de Sentencia Sumaria" y en Solicitud de Sentencia Sumaria a favor de la parte demandante*[11].

El 22 de julio de 2025, el TPI dictó *Sentencia Parcial* y realizó las siguientes determinaciones de Hechos, a saber:

1. La parte demandada es dueña en pleno dominio de la casa localizada en la Urbanización Sunrise Calle Aurora C-2, Palmas del Mar, Humacao, Puerto Rico.
2. La descripción registral de la propiedad es la siguiente:
   URBANA: Urbanización Sunrise de Humacao. Solar: C-2. Cabida: 817.01 Metros Cuadrados. LINDEROS: NORTE, with Lot Number C-1; SUR, with Lot Number C-3; ESTE, with Lot Number J-3; OESTE, with Street Number 4. RIGHT OF WAY EASEMENT: Along the North and West boundaries, the Lot is subject to a 5' wide Telephone Right of Way easement and at the Southwest corner there is 5' x 10' PREPA easement. STRUCTURE: There has been constructed on this parcel of land a single detached residential dwelling unit.
   FINCA: Número 27952 de Humacao, inscrito al Sistema Karibe, Registro de la Propiedad de Puerto Rico, Sección de Humacao.

---

[10] Entrada núm. 36 de SUMAC.
[11] Entrada núm. 40 de SUMAC.

Se segrega de la finca número 26809, inscrito al folio 5 del tomo 582 de Humacao.

3. El 24 de mayo de 2014, las partes de epígrafe suscribieron un contrato de alquiler con opción a compra.

4. El contrato antes mencionado fijaba un término para ejercer la opción de compra que vencía el 23 de mayo de 2017. Vencido dicho término, la parte demandante no ejerció su derecho.

5. El 25 de agosto de 2020, las partes firmaron un nuevo contrato titulado Renovación de Contrato de Alquiler con Opción a Compra.

6. Dicho contrato prolongaba el derecho a ejercer la opción de compra hasta el 25 de agosto de 2023.

"B. Se estipula el precio de la propiedad en el monto del balance de cancelación que será el precio que habrá de pagar "LOS ARRENDATARIOS" de ejercer su derecho a opción a compra el cual se prolongará hasta el veinticinco (25) de agosto de 2023"

C. [...]

D. "LOS ARRENDATARIOS" pagarán la suma correspondiente al pago de la hipoteca que grava la propiedad el cual actualmente asciende a mil seis ($1,006.00) además, deberán pagar el mantenimiento mensual que suma doscientos dólares ($200.00) por concepto de la Urbanización Sunrise, así como el pago por concepto de "homeowner" del complejo Residencial Palmas del Mar del cual "LOS ARRENDATARIOS" manifiestan quedar bien enterados, [...]

E. [...]

K. Con el propósito de refinanciar el préstamo hipotecario que grava la propiedad objeto de este arrendamiento LOS ARRENDATARIOS de su peculio aportaron al principal de la hipoteca que grava la propiedad objeto de este arrendamiento la suma de ochenta mil dólares (80,000.00). En vista de lo anterior, en caso que los ARRENDATARIOS no ejerzan su derecho a opción de compra dentro de los términos y condiciones antes descritos o violen el presente contrato conforme los términos y condiciones antes señalados, LOS ARRENDADORES, independientemente de los demás derechos que tengan a bien reclamarle a LOS ARRENDATARIOS, se comprometen a devolver la mencionada suma de ochenta mil dólares aportada por LOS ARRENDATARIOS conforme los siguientes términos y condiciones: [...]

7. La parte demandante gestionó un préstamo hipotecario con Oriental Bank.

8. El 29 de diciembre de 2021, como parte de los trámites para el préstamo hipotecario, las partes de epígrafe firmaron un nuevo contrato de compraventa que fijó el precio de compraventa en $243,000.00 y concedió un término de noventa (90) días para ejercer la opción, es decir, el 30 de marzo de 2022.

9. Oriental Bank denegó el préstamo a la parte demandante.

10. El 10 de agosto de 2023, la parte demandante remitió una comunicación a la parte demandada, mediante la cual informaba sobre la exigencia de AEELA, esto es, la firma de un documento titulado: "CONTRATO DE COMPRAVENTA/CONTRACT FOR PURCHASE/CONTRATO DE OPCIÓN DE COMPRAVENTA/SALES OPTION CONTRACT", para subsanar la falta de precio cierto de venta en el

contrato firmado el 25 de agosto de 2020: "RENOVACIÓN DE CONTRATO DE ALQUILER CON OPCIÓN A COMPRA".

11. Mediante comunicación de 10 de agosto de 2023, la parte demandante informó a la parte demandada sobre el cierre pautado para el 17 de agosto de 2023.

12. El día 10 de agosto de 2023, la parte demandada cursó una misiva a la parte demandante en respuesta a su comunicación expresando su negativa a la firma de un nuevo contrato que constituyera una novación extintiva ni modificativa del contrato.

Concluye el TPI que, *en el caso ante nos, la parte demandante solicita una Sentencia Declaratoria que confirme la validez del contrato titulado Renovación de Contrato de Alquiler con Opción a Compra suscrito el 25 de agosto de 2020, y la consecuente comparecencia de la parte demandada a la correspondiente escritura de compraventa. Sobre el particular, es preciso matizar que el contrato firmado el 25 de agosto de 2020 estipula que el precio de la propiedad será el monto del balance de cancelación de los arrendatarios ejercer su derecho a opción a compra que, según se establece expresamente, se prolongará hasta el veinticinco (25) de agosto de 2023. Conforme a los términos de dicho contrato, concurrió un acuerdo sobre la venta de la propiedad, pero no sobre el precio final. […] Ciertamente, si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Concluimos, pues, que al no haberse perfeccionado un acuerdo sobre el precio cierto al cual se vendería el inmueble, no se cumplió con el requisito de causa cierta, definida, clara y libre de ambigüedades. En otras palabras, por el contrato en cuestión no cumplir con el requisito de causa, al no haberse establecido un precio para la compra, no hubo un entendimiento mutuo o acuerdo que permita concluir que surgió a la vida un acuerdo de opción de compra; lo cual se traduce en la ineficacia del negocio jurídico haciéndolo nulo ab initio. En fin, un contrato sin causa no produce efecto alguno, lo que revela que no es un contrato simplemente anulable, sino radicalmente nulo o inexistente. Al no mediar precio se vio derribada la causa contractual*

*y, con ella, el negocio jurídico entre las partes.* […] *El TPI declaró HA LUGAR la Moción de Sentencia Sumaria y, en consecuencia, se desestima la demanda en cuanto a los demandados Noel Sotomayor Casanova y su esposa Becky Cintrón Bernier. Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3. Se ordena la continuación de los procesos en cuanto a la Reconvención.*

Los apelantes solicitaron *Reconsideración*[12], la cual fue declarada No Ha Lugar. Aun inconformes, presentaron la apelación de epígrafe, mediante la cual sostienen que el foro primario cometió los siguientes errores:

> A. Erró crasamente el TPI en la apreciación del requisito de "precio cierto" en contratos de opción al pasar por alto que la cláusula incluida en el contrato en este caso establece como precio "el balance de cancelación" – lo que es una fórmula objetiva y determinable, y no requiere un número fijo si puede calcularse sin negociación adicional de las partes. Lo resuelto por el TPI es contrario a la normativa prevaleciente establecida por nuestro Tribunal Supremo.

> B. Erró el TPI al ignorar totalmente que hay hechos esenciales – sobre los cuales no existe controversia- que no fueron incluidos como determinaciones de hechos en la Sentencia Parcial.

> C. Incurrió en error al dictar la sentencia sumaria parcial a pesar que de la evidencia provista por los demandantes-apelantes se desprende que se han trabado controversias sustanciales sobre hechos medulares que impiden que se dicte la sentencia sumaria.

> D. Erró el TPI incurrió en craso error al resolver una controversia contractual ignorando por completo la totalidad de las circunstancias y las actuaciones de las partes antes y durante la firma de los contratos. La interpretación literal del contrato (como lo hizo el TPI) es improcedente cuando existe controversia sobre la intención de las partes.

> E. Erró crasamente el TPI porque al dictar la Sentencia Parcial ignoró que las actuaciones y actos propios de las partes en una relación contractual o extracontractual pueden generar responsabilidad.

> F. Incurrió en error el TPI al no tomar en cuenta que idependientemente de si se resuelve la nulidad del contrato, de todas formas y en la alternativa, no procede desestimar la Demanda en su totalidad, ya que en la misma se reclaman daños y perjuicios como consecuencia de los actos propios de los demandados que mediante sus actos y representaciones promovieron y demostraron su voluntad de continuar bajo el contrato del 2020, que establecía el vencimiento de la opción de compra hasta el 25 de agosto de 2023.

---

[12] Entrada núm. 52 de SUMAC.

Examinado el recurso, el 9 de septiembre de 2025, emitimos *Resolución* concediéndole a los apelados un término para presentar su postura en cuanto a la apelación. Oportunamente, los apelados presentaron su *Alegato de la Parte Apelada.*

Con el beneficio de la comparecencia de todas las partes, estamos en posición de adjudicar.

## II.

### -A-

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[13]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

(1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;

(2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[14].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[15]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[16].

---

[13] *Maldonado v. Cruz,* 161 DPR 1, 39 (2004).
[14] *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004).
[15] *Íd.*, págs. 333-334.
[16] *Maldonado v. Cruz, supra.*

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[17]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[18]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[19]. **Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente**[20]. **Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria**[21]. **Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"**[22].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[23]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

---

[17] *Íd.*, pág. 334.
[18] *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).
[19] *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996).
[20] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).
[21] Véase, *Piñero v. AAA*, 146 DPR 890 (1998); *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, *supra*.
[22] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990) (énfasis suplido).
[23] *Íd.*

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[24].

**-B-**

Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233, Código Civil 2020[25]. De ahí nace la definición de un contrato, a saber, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 Código Civil 2020[26]. La obligación contractual se configura cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación. Articulo 1237 Código Civil 2020[27]. Al concurrir lo anterior, se perfecciona el contrato y, desde entonces, este obliga al cumplimiento de lo pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, el uso y la ley.

Como principio general, los contratos no tienen requisitos de forma. Artículo 277 del Código Civil 2020[28]. Por otro lado, una vez perfeccionados, los contratos tienen fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo

---

[24] *Roldán Flores v. M Cuebas*, 199 DPR 664, 679 (2018).
[25] 31 LPRA secc. 9754. Artículo 1044 del Código Civil, derogado, 31 LPRA sec. 2994.
[26] 31 LPRA secc. 9751. Artículo 1206, Código Civil derogado, 31 LPRA secc. 3371.
[27] 31 LPRA secc. 9771. Artículo 1213, Código Civil derogado 31 LPRA sec. 3391.
[28] 31 LPRA secc. 6161.

expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley"[29].

El concepto *causa* consiste en la razón por la cual se obliga el deudor. En términos sencillos y diáfanos, Guaroa Velázquez define la *causa* contractual como la "razón esencial que impulsa al deudor a obligarse"[30].

El derecho de contratos en nuestro ordenamiento jurídico está asentado en la premisa inexorable de que no existe contrato sin causa o cuando la causa es ilícita[31]. En cuanto a la causa, el Artículo 276 del Código Civil 2020[32], dispone que "La falta de causa lícita coetánea con la celebración del negocio jurídico, lo vicia de nulidad. Si al momento de su cumplimiento, la causa se frustra por razones no imputables a las partes, el negocio jurídico puede resolverse por decisión del perjudicado, o pueden adecuarse las prestaciones".

### -C-

Bajo el Código Civil 1930 derogado, el estado de derecho era el siguiente; al igual que en casi todas las jurisdicciones de tradición civilista, el contrato o pacto de opción no está reglamentado en nuestro Código Civil[33]. Más bien se trata de un contrato que ha sido definido jurisprudencialmente de la siguiente manera: "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro

---

[29] 31 LPRA sec. 9754. Véase, además, *Oriental Bank v. Perapi et al.*, 192 DPR 7 (2014); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 8 (2015).

[30] Guaroa Velázquez, *La Obligaciones Según el Derecho Puertorriqueño*, a la pág. 44 (Equity Publishing 1964); *C.M. Finance Corp. v. Cooley,* 103 DPR 6, 8 (1974).

[31] Artículo 271. — Presunción de causa lícita. (31 LPRA secc. 6142) Se presume que el negocio jurídico tiene causa lícita, aunque no esté expresada. *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172, 181 (1985). Artículo 275. — Causa lícita. (31 LPRA secc. 6146) El negocio jurídico debe tener causa lícita al momento de su celebración y conservarla hasta su ejercicio.

[32] 31 LPRA secc. 6147. Código Civil 1930 derogado, Artículo 1227 31 LPRA sec. 3432.

[33] Véase Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur- UPR 565 (1984).

de un período de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán con el negocio[34].

En esencia, el contrato de opción de compraventa es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compra y venta, el cual se distingue por los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante[35].

En lo que respecta a los requisitos del contrato de opción a compra, nos señala Michel J. Godreau:

> [N]uestro ordenamiento no permite todavía que la mera manifestación por parte de un propietario en el sentido de que él se obliga a vender obligue a éste a aceptar un precio o unos términos de pago a los cuales no ha consentido libremente. La determinación respecto a la enajenación de un bien y el precio de cambio del cual el mismo ha de transferirse es cuestión que nuestro ordenamiento deja todavía al arbitrio del propietario.
>
> De la posibilidad de obligarle a transferir su propiedad a otro particular sólo puede hablarse cuando ha habido **acuerdo sobre la cosa y el precio.** En cambio, cuando lo único que se ha acordado es "la venta", sin más, ni siquiera el juicio imparcial de un juez respecto al valor en el mercado del bien en controversia puede sustituir la prerrogativa dominical de fijar el precio y establecer los términos de la enajenación, prerrogativa que en este sistema sólo le compete al dueño." Michel J. Godreau, _La opción de compra en Puerto Rico,_ 53 Rev. Jur. UPR 569 (1984) a la pág. 569.

Resulta meritorio resaltar que "[e]n la opción se da un proceso negocial en donde el _consentimiento_ hacia la obligación surge, como en todo contrato, en virtud del intercambio de manifestaciones recepticias. La voluntad se forja a base de un proceso de negociación. No se trata de manifestación unilateral de voluntad, porque las obligaciones que surgen del pacto de opción son el resultado de un proceso de negociación entre el concedente y el

---

[34] _S.L.G. Irizarry v. S.L.G. García,_ 155 DPR 713, 722 (2001).
[35] _S.L.G. Irizarry,_ 155 DPR a la pág. 722.

optante, proceso que no se da en las obligaciones cuya fuente es la mencionada manifestación unilateral de voluntad"[36]. Por lo tanto, el proceso para elaborar y perfeccionar un contrato de opción a compra es uno *necesariamente* de negociación y no unilateral.

El ejercicio de la opción no es otra cosa que la aceptación de la oferta de venta, la cual equivale para el comprador a su promesa de pagar el precio pactado[37]. El pacto de opción tiene que definir la oferta que habrá de mantenerse vigente *con todos los elementos de una oferta final y completa* del contrato de compraventa. En otras palabras, **para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de compraventa que sean de importancia para las partes**[38]. Por su parte, "[r]especto al precio de la finca, que es el que importa desde el punto del contenido de la oferta, tiene que tratarse de un precio en metálico, porque se trata de una oferta de venta, no de permuta. **Además, aplican aquí los principios de las obligaciones respecto a los requisitos de la prestación, en particular, el de la determinabilidad de la misma**. No será necesario que el precio de venta esté exactamente determinado, siempre y cuando su determinación final no requiera un nuevo proceso de negociación"[39].

De otra parte, en cuanto a la promesa bilateral de compraventa, nuestro Código Civil dispone que es la promesa de vender o comprar, habiendo conformidad de la cosa y en el precio, y la misma da derecho a los contratantes a reclamar recíprocamente el cumplimiento de la misma. Siempre que no pueda cumplirse la promesa de compra y venta, regirá, para vendedor y comprador,

---

[36] Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur. UPR a la pág. 577.
[37] *Íd.*, a la pág. 578.
[38] *Íd.*, a la pág. 596.
[39] *Íd.*, a la pág. 597.

según los casos, lo dispuesto acerca de las obligaciones y contratos en el Código Civil, Artículo 1340[40].

Este tipo de contrato preparatorio produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización futura de un contrato de compraventa[41]. El contrato de promesa bilateral tiene la ventaja de lograr la vinculación inmediata de las partes cuando por alguna razón no puede otorgarse una compraventa completa y definitiva y que, mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde[42]. *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).

Por consiguiente, ante la negativa de una de las partes de cumplir con la promesa bilateral, cabe una acción para exigir su cumplimiento específico y no simplemente una acción para el resarcimiento de perjuicios, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes[43]. Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública. Íd.

Ahora, el Código Civil 2020 regula el contrato de opción por los siguientes Artículos:

> Artículo 1029. — Opción. La opción de compra es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se

---

[40] 31 LPRA sec. 3747.
[41] *Soto v. Rivera*, 144 DPR 500, 509-510 (1997); *Dennis, Metro Invs. v. City Fed. Sav.*, 121 DPR 197 (1988); *Jordán-Rojas v. Padró-González*, 103 DPR 813, 817 (1975).
[42] *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).
[43] *Rossy v. Tribunal Superior*, 80 DPR a la pág. 743; Véase también, *Jordán-Rojas v. Padró-González*, 103 DPR a la pág. 819.

mantiene comprometido el concedente durante el plazo prefijado[44].

El Artículo 1030 del Código Civil[45] vigente enumera algunos requisitos que, como mínimo, debe contener la opción de compra para su constitución.

> Artículo 1030. — Requisitos del título de constitución. El título de constitución, además de las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente, debe contener, como mínimo, los siguientes requisitos: (a) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (b) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (c) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y (d) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido. Los contratos de opción de compra se pueden inscribir cuando cumplan con los requisitos anteriores y consten en escritura pública.

> Artículo 1031. — Duración del derecho. (31 LPRA § 8823) El derecho de opción de naturaleza real puede constituirse por un tiempo máximo de cinco años, si recae sobre bienes inmuebles, o de dos (2) años, en el caso de los bienes muebles. La inscripción de la opción en el Registro de la Propiedad caduca transcurrido el plazo para ejercerla, o cinco (5) años después de la fecha en que fue inscrita. Puede inscribirse otra vez por el término aquí dispuesto, si no ha vencido el término contractual para el ejercicio de la opción. La opción inscrita tiene la condición de gravamen y obliga a los subsiguientes adquirentes de acuerdo con sus términos. El derecho de opción puede ser objeto, por acuerdo, de sucesivas prórrogas, pero cada una de ellas no puede exceder los tiempos máximos establecidos en los párrafos anteriores. Cuando el derecho de opción se constituye como un pacto o una estipulación integrada en otro negocio jurídico, su duración puede ser la misma de este negocio jurídico, con las correspondientes prórrogas. La opción de compra contenida en un contrato de arrendamiento es inscribible, única y exclusivamente por la duración del arrendamiento sin incluir la prórroga.

> Artículo 1032. — Ejercicio[46]. El ejercicio del derecho de opción a la adquisición onerosa requiere el pago previo o simultáneo del precio fijado, determinado según los criterios establecidos, o el que resulta de la aplicación de las cláusulas de estabilización, si se han previsto.

> Artículo 1235. — Contrato preliminar; opción. (31 LPRA § 9756) Por el contrato preliminar las partes se obligan a celebrar un contrato futuro. El contrato preliminar se denomina Opción si le atribuye a una sola de las partes la facultad de decidir sobre la celebración del contrato futuro.

---

[44] 31 LPRA secc. 8821.
[45] 31 LPRA secc. 8822.
[46] 31 LPRA secc. 8824.

> El contrato preliminar no está sujeto a cumplir las formalidades que debe satisfacer el contrato futuro. Si la parte requerida se niega al otorgamiento del nuevo contrato, el tribunal puede exigir a la misma estricto cumplimiento.

De otra parte, se ha reiterado que "el alcance de la opción aludida no se puede fijar sin tomar en cuenta el contenido específico que en [el] contrato se le imparte"[47]. Por lo cual, hemos reconocido la posibilidad de que las partes convengan que el derecho de opción esté supeditado al cumplimiento de ciertas condiciones[48].

### III.

En el caso de autos, debemos determinar si procedía declarar *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por los apelados. Por su parte, los apelantes alegan que el TPI incidió al emitir la *Sentencia Parcial* aquí impugnada. Estos argumentan seis errores, que atenderemos de forma conjunta, los cuales se pueden resumir de la siguiente forma: erró el foro recurrido al resolver que el contrato de opción a compra del 25 de agosto de 2020 carece de un precio cierto; determinar que no existe controversia de hechos esenciales; y, que las actuaciones de los apelados no son contrarias a sus actos propios.

Tras un análisis minucioso del expediente ante nuestra consideración, resolvemos que el foro recurrido incide en su determinación. Veamos.

Según adelantamos en la exposición del derecho, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*[49]. De igual forma, el segundo paso exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los

---

[47] *Zeta Enterprises, Inc. v. ELA*, 145 DPR 1, 10 (1998).
[48] *Íd.*
[49] *Roldán Flores v. M. Cuebas, supra,* pág. 679.

requisitos de la Regla 36 de Procedimiento Civil, *supra*[50]. Ahora bien, luego de examinada la solicitud de sentencia sumaria como su oposición, determinamos que ambos escritos cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por lo tanto, corresponde continuar al tercer criterio del aludido estándar de revisión apelativa sobre las solicitudes de sentencia sumaria.

El tercer paso, conlleva revisar si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Luego de una revisión exhaustiva del expediente, concluimos que **NO** existen hechos en controversia.

Pasamos al cuarto y último eslabón; por lo que, debemos revisar de *novo* si el TPI aplicó correctamente el derecho[51]. Es aquí donde el TPI incide en la aplicación del derecho. Veamos. El foro apelado resuelve: *Concluimos, pues, que al no haberse perfeccionado un acuerdo sobre el precio cierto al cual se vendería el inmueble, no se cumplió con el requisito de causa cierta, definida, clara y libre de ambigüedades. En otras palabras, por el contrato en cuestión no cumplir con el requisito de causa, al no haberse establecido un precio para la compra, no hubo un entendimiento mutuo o acuerdo que permita concluir que surgió a la vida un acuerdo de opción de compra; lo cual se traduce en la ineficacia del negocio jurídico haciéndolo nulo ab initio. En fin, un contrato sin causa no produce efecto alguno, lo que revela que no es un contrato simplemente anulable, sino radicalmente nulo o inexistente. Al no mediar precio se vio derribada la causa contractual y, con ella, el negocio jurídico entre las partes.*

---

[50] *Íd.*
[51] *Íd.*

Surge del examen del legajo apelativo del caso que es evidente que el TPI erró en su análisis jurídico. Fíjese que nos encontramos ante una controversia puramente jurídica, puesto que no hay hechos en controversia y el único análisis que debemos emplear es uno interpretativo de diversos artículos del Código Civil.

Así, y a tenor con el derecho expuesto anteriormente, el contrato de opción a compra requiere la concurrencia de las tres condiciones indispensables para la validez del contrato, es decir, consentimiento de los contratantes, objeto cierto de la materia del contrato y causa de la obligación que se genera[52]. La *causa* del contrato de opción a compra requiere, en este caso, la existencia de un precio o su equivalente que sea determinado.

Contrario al TPI, entendemos que el contrato firmado el 25 de agosto de 2020 se perfeccionó y que existía un acuerdo sobre el precio –el cual es de fácil corroboración- al cual se vendería el bien inmueble. Estamos, así pues, ante un contrato que cumple con el requisito de *causa,* por haberse establecido un precio para la compra.

Destacamos que, la conducta mostrada por los apelados no tiene lugar en el campo del Derecho, y debe ser impedida[53]. El Tribunal Supremo de Puerto Rico ha incorporado en la jurisprudencia "la regla de que nadie puede ir en contra de sus propios actos"[54]. Esta regla "se encuentra fundamentada en la máxima que exige proceder de buena fe en el desenvolvimiento de las relaciones jurídicas, el ejercicio de los derechos y el cumplimiento de las obligaciones"[55].

---

[52] Artículos 1230 y 1213 del Código Civil, 31 LPRA secs. 3451 y 3391, respectivamente.
[53] *Int. General Electric v. Concrete Builders*, 104 DPR 871, 877 (1976).
[54] *OCS v. Universal*, 187 DPR 164, 172 (2012); *Vivoni Farage v. Ortiz Carro*, 179 DPR 990 (2010).
[55] *OCS v. Universal, supra*, pág. 172, citando a *Vivoni Farage v. Ortiz Carro, supra*, pág. 1010.

La doctrina de actos propios existe para impedir que una parte contradiga una actuación u omisión anterior, o que intente evadir los efectos jurídicos que acarrean dichas actuaciones u omisiones[56]. En el caso de autos, se acordó el precio cierto y fijo, por escrito, así pues, hubo un entendimiento mutuo que permite concluir que surgió a la vida un contrato de opción de compra. Por tanto, los apelantes ejercieron la facultad de opción dentro del plazo concedido, y así se perfecciona el contrato definitivo, es decir, el contrato por el cual optó[57]. La negativa de los apelados para firmar un nuevo contrato propuesto por la AEELA como parte del proceso del préstamo hipotecario es improcedente en derecho. Concluimos que los apelados están obligados en ley a vender la propiedad a los apelantes, bajo los términos pactados en el contrato del 25 de agosto de 2020.

## IV.

Por los fundamentos que anteceden, ***revocamos*** el dictamen apelado, declaramos *Ha Lugar* la *Oposición a "Moción de Sentencia Sumaria" y en Solicitud de Sentencia Sumaria a favor de la parte Demandante*[58] presentada por los apelantes y ordenamos el cumplimiento del contrato del 25 de agosto de 2020. Consecuentemente, declaramos *No Ha Lugar* la *Reconvención* presentada por la parte apelada y devolvemos el caso al TPI para la continuación de los procedimientos en cuanto a la concesión de daños y la imposición de honorarios por temeridad solicitados por la parte apelante.

Notifíquese.

---

[56] *Int. General Electric v. Concrete Builders, supra*, 878.
[57] *Matos Lorenzo v. Rivera Tirado*, 181 DPR 835, 841 (2011).
[58] Entrada núm. 40 de SUMAC.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones